# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

Szeto, Sui Fong a/k/a
Ah Fong, Bike Fong,
Crippled Fong, Paul Szeto

Pro-se    Defendant(s)

v.                                    Case No. 93-10352-07NMG

                                      04-40025 -NMG

United States of America
    Plaintiff

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO VACATE CONVICTIONS AND WITHDRAW GUILTY PLEAS

Statement of Facts:

1. The Defendant is a native of Hong Kong, China who upon information and belief, was admitted as a L.P.R. of the United States at the age of 23, on or about June 16th, 1978. He has lived in the U.S. since 1978, over 26 years.

2. The Defendant, now 49, is married to a U.S. Citizen and has two U.S. Citizen children

3. In 1996, at the age of 41, the Defendant experienced serious personal problems, which he now seems to have resolved, but which led him to commit certain offenses. On February 5th, 1996 the Defendant was convicted (**But see Defendant's objections in paragraph #83-**

**currently paragraph 108- stating that this offense did not end in, a conviction but a rather a continuance without a finding (CWOF), as indicated on the docket entry submitted by the prosecutor)** by the United States District Court of Massachusetts for the offenses of Operation of illegal gambling business and Extortion: **18 U.S.C. 1955, 2; 18 U.S.C. 1955,2; (93-10352-07 NMG.**

4. Defendant is a hardworking, energetic person, who has, in spite in his immigration status is gainfully employed.

5. Upon information and belief, the Defendant has no other convictions. The Defendant is very close to this family in the United States; he is a good father, and seems to have turned his life around.

6. Because of his convictions of February 5th, 1996, the U.S, Immigration and Naturalization Service ("INS") initiated "removal" (deportation) proceedings against the Defendant, when the "INS" issued an order to Show Cause on September 5th, 1997 and filed it with the Immigration Court in Oakdale, LA.

7. The Defendant's Notice to Appeal alleged that the Defendant was removable pursuant to the **section 237(a) (2) (A) (iii)** of the Immigration and Naturalization Act, as amended, in that the conviction is an aggravated felony as defined in **section 101 (a) (43) (J)** of the Act (relating to the gambling offenses).

8. The Defendant sought to apply for **section 212( c )** relief before the Immigration Court, however the Immigration Judge denied this relief and ordered the Defendant Deported to the People's Republic of China.

9. On May 6th, 1999, Board of Immigration Appeals affirmed the decision of the Immigration Judge dismissing Defendants Appeal. The Deportation by "INS" became imminent.

10. The Defendant filed a Habeas Corpus under **28 U.S.C. & 2241**, for Declaratory and Injunctive Relief and for a stay of Deportation of June 5th, 2001.

11. Upon information and belief, the Honorable D.J. Wolf <u>stayed</u> the Defendant's deportation on June 7th, 2001, as the Defendant was scheduled on this date.

12. The "INS" seeking to deport Defendant on grounds that, under the new Immigration Act of 1996, the **Anti-Terrorist and Effective Death Penalty Act, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA")**. This new law made deportation **<u>automatic</u>** and **<u>mandatory</u>** for an alien or immigrant who committed certain offenses.

13. The tape recordings of Defendants plea, upon belief, have been destroyed. Accordingly this court may look to other evidence in the file that an alien warning was or was not given pursuant to **Rule 11**. This Court may also look to the "unusual practice" of the Judge concerning the giving of the alien warning at the time of Defendants plea was accepted. The conviction must be vacated unless the court informs the Defendant, prior to plea, of the possibility of <u>**deportation**</u>, <u>**exclusion**</u>, or denial of <u>**naturalization**</u>, violating **Fed. R. Crim. P. 11**. See <u>United States v. Baty</u>, 980 F. 2d 977, 978-979 (5th Cir. 1992); <u>United States v Bushert</u>, 997 F. 2d 1343, 1351 (11th Cir. 1993); <u>United States v. Marin</u>, 961 F. 2d 493, 496 (4th Circuit 1992 ) See also <u>Downs – Morgan v. U.S.</u>, 765 F. 2d 1534, 1538 (11th Cir. 1985), citing <u>Wofford v. Wainwright</u>, 748, F. 2d 1505 , 1508 (11th Cir. 1984)

14. Many Courts have determined that, in order for a defendant to **knowingly and voluntarily** waive his right to a Jury Trial, he **must** be warned "that the conviction of the offense for which you have been charged may have the consequences of **deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States of America**". Prior, many Courts believed that they had <u>**only**</u> advise defendants generally of the possible immigration consequences flowing from a conviction or that they only had to mention the consequences of deportation.

15. Even if Defendant was given an alien warning exactly as prescribed by **Fed. R. Crim. P. 11,** at the time the Defendant chose to plead guilty, or made sufficient admissions of 1996, he **never** was informed of the fact that a plea of guilty (or sufficient admissions) would **automatically** subject him to **mandatory** deportation under the immigration laws. Had the Defendant been given that information by his attorney, he would **not** have entered a plea of guilty to the stated offenses, or would **not** have made sufficient admissions, but he would have either **chosen** a Jury Trial or he would have plead to different charges, and bargained to a different sentence, taking into account the immigration consequences of his plea or admissions and sentences.

16. Further, if Defendant was given the alien warning exactly as prescribed by **Fed. R. Crim. P. 11** at the time the Defendant unknowingly chose to plead guilty or made sufficient admissions, he also did not a Court warning of the <u>**mandatory**</u> immigration consequences of a guilty plea. The alien warning, as mandated by **Fed. R. Crim P. 11,** even when given, does not inform the Defendant that a deportation is now <u>**mandatory**</u> if a guilty plea to certain offense is entered. As a consequence the Defendant **was not aware that he would be deported,** as a consequence of his plea admissions or sentencing. The Defendant's criminal counsel at the time also <u>**did not inform**</u> the Defendant that his convictions would trigger **automatic and mandatory** deportation pursuant to the Immigration Act of 1996.

17. In 1996, the **Anti-Terrorist and Effective Death Penalty of 1996, Pub.L. No. 104-132 110 Stat. 1214 ("AEDPA")** was enacted. This new law made deportation **automatic and mandatory** for an alien or immigrant who committed certain offenses. Such offenses include crimes defined, broadly, as "aggravated felonies", or "crimes involving moral turpitude". As a result of the Act, the Defendant, as stated, faces **imminent** deportation. Consequently, the Defendant now respectfully moves this Honorable Court, in the interest of **Justice, due process, and for humanitarian reasons,** to vacate his convictions.

## II. ARGUMENT

A. A disposition must be **vacated** if the Trial Judge **does not** administer a **Mandatory** warning regarding Immigration consequences of a Conviction Upon Tendering of a guilty plea.

1. **Federal Rule of Criminal Procedure 11,** requires a Judge to **inform** the Defendant, on the record and in open court, of the consequences of his plea, Pursuant to **Fed. R. Crim. P. 11,** a Defendant must be advised that if he is not a United States Citizen, a conviction may have a consequence of **deportation, exclusion of admission to the United States, or denial of naturalization.** If the Court **fails** to advise the Defendant, and he later at any time shows that his plea and conviction may have one of the enumerated consequences, the Court, on the Defendant's motion, shall vacate the Judgment. Absent a record that the Court provided the advisement required by this section, the Defendant shall be presumed **not** to have received the required advisement. This information is expressly required by the statue to be imparted by the Judge, rather than by counsel as permitted with respect to other consequences. The intent of the law is obviously for the alien defendant to receive a fair and adequate warning that a guilty plea may **(but, in some cases now "shall")** have serious immigration consequences.

2. In a case such as the Defendant's when he decided to plead guilty or to make sufficient admissions, he was given **No** warning, that he would make himself **automatically** deportable. At the time the Defendant committed his offenses **(Prior to enactment of the Immigration Act of 1996),** the immigration laws did provide certain relief from deportation, which the

      **Immigration act of 1996** has now **eliminated**. Since the **Immigration Act of 1996** has made deportation **mandatory** in many instances, a Defendant who pleads guilty in one such instance should, in all fairness also be **warned** that, by entering such a plea, he will face **mandatory** deportation, so that a Defendant may make an **informed** and **knowing** decision. This is the INTENT of the law, **Fed R. Crim P. 11**. However, the warning in its <u>past</u> form, even when given, in cases such as the Defendant's, inaccurate, insufficient, and unfair, as it does not convey the notion that there are now **mandatory** consequences to a plea, conviction and sentences etc.

3. A Defendant has a Constitutional right to know that a plea of guilty may affect his immigration status. The purpose of the advisement is to assure that a Defendant knows that a plea of guilty may have an effect on his alien status. **Rule 11** --- The burden is on record of the proceedings, to affirmatively demonstrate that the Defendant was advised that his plea might impair his immigration status. If the Government cannot provide an affirmative record that the required advisement was given, the presumption that it was not given is controlling, is considered to be a collateral under **Fed. R. Crim. P. 11.** See <u>Sparks v. Souder,</u> **852 F. 2d 882 (6th Cir. 1988);** <u>Michael v. United States,</u> **507 F. 2d 461, 465 (2nd Cir. 1974)**

4. Furthermore, in a case at bar, an appropriate warning to the Defendant would have been that, not only his plea of guilty, or admissions, "may" have the consequences of deportation and such forth, but that it "shall" make the Defendant deportable.

5. In 1996, the **Anti-Terrorist and Effective Death Penalty of 1996, Pub.L. No. 104-132 110 Stat. 1214 ("AEDPA")** was enacted. This new law made deportation **automatic and mandatory** for an alien or immigrant who committed certain offenses. Such

offenses include crimes defined, broadly, as "aggravated felonies", or "crimes involving moral turpitude". The Defendant now respectfully moves this Honorable Court, in the interest of **Justice, due process, and for humanitarian reasons,** to vacate his convictions.

6. Even if the Defendant was given an alien warning as prescribed by **Rule 11**, at the time the Defendant chose to plead guilty (or make sufficient admissions) would **automatically** subject him to **mandatory** deportation under the new immigration laws. Had the Defendant been given that information by his attorney he would **NOT** have entered a plea of guilty to the stated offenses, but would have plead to lesser charges and bargained for a different sentence taking into account the immigration consequences that the plea or admissions carry. See <u>United States v. Castro</u>, 26 F. 3d 557 (5th Cir. 1994); <u>Janvier v. United States</u>, 449 793 F. 2d (2nd Cir. 1986).

7. Even if the Defendant was given an alien warning exactly as **Rule 11** prescribed, at the time the Defendant unknowingly chose to plead guilty or make sufficient admissions, he also did not receive from the Court a warning of the **mandatory** immigration consequences of a guilty plea. The alien warning, as mandated by **Rule 11,** when given does not inform a defendant that a deportation is now **mandatory** if a guilty plea is entered. As a consequence, the Defendant was not aware that he would be deported, as a consequence of his plea, admissions or sentencing. The Defendant's criminal counsel at the time also did not inform the Defendant his conviction would trigger **automatic and mandatory deportation pursuant to the Immigration Act of 1996.**

### B. The Defendant's Attorney Failed To Advise The Defendant Of His Certain Deportation Resulting From Entering A Plea Of Guilty

1. A Judge may grant a defendant's motion to withdraw a guilty plea if it appears that justice may not have been done. The Defendant's counsel may cure an insufficient advisement the Defendant of the adverse consequences of the Defendant's plea. A plea of guilty **must also be knowing and voluntary. See Kercheval v. United States, 274 U.S. 220, 223 (1926); Powell v. Alabama, 287 U.S. 45, 71 (1932).**

1. An intelligent plea requires that the Defendant have knowledge of procedural protections that he would forego by pleading guilty, or by making admissions. See Vacating Criminal Convictions, 1997-1998 Immigration and Nationality Law Handbook, Volume II, published by the AILA, Washington, DC 1997, pp. 339 et seq, as well as National Legal AID and Defender Association (NLADA) Performance Guidelines for Criminal Defense Representation (1994). According to Norton Tooby, Counsel in criminal proceedings have a duty to warn the alien, "Relief is routinely granted when there is ineffective assistance of counsel and prejudice, as when it is shown that a guilty plea would never have been tendered if defendant had been properly advised by counsel" – Vacating Criminal Convictions, 1997-1998 Immigration and Nationality Law Handbook, Volume II, published by the AILA, Washington, DC 1997, pp. 339 et seq, at p. 362.

2. The mandatory immigrants consequence to the Defendant's convictions and sentencing of two (2) years is deportation. This Honorable Court was, most certainly, in February 5th, 1996, **unaware of this fact,** when it convicted and sentenced the Defendant as it did. Effective April 1st,1997, the IIRAIRA

provides for **automatic and mandatory** deportation for immigrants who are convicted of **or** plead guilty to, certain offenses, including very broadly defined "aggravated felonies" or "crimes involving moral turpitude".

3. Furthermore, relief which was previously available to the Defendant has been **eliminated** by the Immigration Act of 1996. His attorney or the Court never advised the Defendant of the **mandatory** immigration consequences. Had he been advised that deportation under the new Act was **automatic and mandatory**, the Defendant would not have plead guilty or never made admissions as he has done. The Defendant would have negotiated with the authorities in order to protect his immigration status in the U.S. In interest of fairness and justice, the Defendant's convictions should be vacated, as a result of the Defendant's plea **not** being knowing and voluntary, and due in effective assistance of Counsel. **Strickland v. Washington 466, U.S. 668 (1984); Herring v. Estelle, 491, F. 2d 125, 127 (5th Cir. 1974)**

## C. Mandatory Deportation Unfairly Punishes The Defendant Twice For The Same Offense Thereby Offending Due Process

1. The Defendant herein has already been convicted and punished for his offenses. It is unfair to violate due process (double-jeopardy) to punish the Defendant for the same offenses. Whether deportation is a criminal or civil punishment is an issue which is irrelevant. The fact of the matter is that deportations, a most severe and drastic form of

punishment, which, under International Law (Article 33 of the United Nations Convention Relating to the Status of Refugees to which the U.S. acceded by the Protocol Relating to the Status of Refugees in 1968), must be used in extreme circumstances, further, the fact that the Defendant, only because he was not born in the U.S., faces consequences from which the United States born defendants are exempt, is a violation of the equal protection afforded, to <u>all</u> by the United States Constitution.

### D. The Doctrine of Coram Nobis Allows The Court To Vacate The Defendant's <u>Conviction</u>

1. Under the common-law doctrine of Coram Nobis , Jurisdiction lies with this Court to Vacate the Judgments entered against the Defendant, where the Defendant to was not warned of the immigration consequences of his guilty plea or admissions (lack of due process), and the Court was presumably unaware of such dire mandatory consequences at the time (error of fact). The Writ of Error Coram Nobis is "a common-law writ, the purpose of which to correct a Judgment in the same court in which it is rendered, on the ground of error of fact, (citations omitted) ... for which the statue provides no other remedy, which fact did not appear of record, (citation omitted); or was unknown to the Court when the Judgment was pronounced, and which, if known, would have prevented the judgment and which was unknown and could not have been known to the party by exercise of reasonable diligence in time to have been otherwise presented to the Court, unless he was prevented from presenting them by duress, fear, or other sufficient cause, (citations omitted) ...." Blacks Law Dictionary,

      4th Edition, Rev., West Publishing Co., St. Paul, MN, 1968, at p. 1785.

2. The absence of proper warning to the Defendant constituted procedural error. The Defendant would not have made the choice he did, had he been aware of the deportation consequences of such decisions. Rather, he would heave elected different opinions which would have offered some protection of his immigrant status. Due to changes in the immigration law between times **Rule 11** was enacted, and enactment of the **I.N.A in 1996,** this Defendant, pursuant to the laws of the **Fed. R. Crim.**, but also sentenced him to deportation. It is respectfully submitted that this was **not** the intent of this Court

### III.  Conclusion

      The Defendant prays this Honorable Court at this time vacates the Defendant's convictions, in the interest of fairness, due process of the law, and for humanitarian reasons as follows:

(A) At the time of Judgment, an error of fact existed

(B) The fact does not appear in the record and does not involve the merits of the issues tried;

(C) The fact was not introduced at the trial either

    (1) because it was not discovered at the time of trial, without the fault or negligence of defendant, or

    (2) because of duress, fraud, or excusable mistake

(D) Knowledge of the fact would have prevented the rendition of Judgment; and

(E) Grant any/all further relief


Respectfully Submitted,

/s/

Pro-Se